# Landreth, Appellant, *v.* Howell.

*Deed—Deficiency in acreage—Master's sale in partition—Mistake.*

A master in partition sold a tract of land described by metes and bounds and said to contain six acres three roods and eight perches of land more or less at $2,500 per acre. The quantity of the tract was introduced in the papers by way of description and there was no covenant or warranty as to quantity. The description was in accordance with the ancient title papers conveying the land. None of the parties to the transaction had any knowledge that the land described in the paper did not contain the quantity mentioned in the description. There was a deficiency less than ten per cent of the estimated acreage. The purchaser paid over the purchase money for the quantity mentioned in the description, accepted title, and rested for about a year before making any attempt to recover for the deficiency in the quantity of the land. In the meantime the master's report was filed, and the money received from the purchaser was paid over under decree of the court, to the parties entitled thereto. *Held*, that the purchaser could not thereafter recover in an action of assumpsit from such parties the amount of the deficiency.

Argued Dec. 18, 1903.   Appeal, No. 249, Oct. T., 1903, by plaintiff, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1900, No. 286, on verdict for defendant in case of Lucius S. Landreth v. Emma A. Howell.   Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Assumpsit to recover for deficiency of acreage of land conveyed under a master's deed in partition.   Before WILTBANK, J.

At the trial it appeared that a master in partition sold plaintiff a tract of land containing six acres three roods and eight perches more or less at $2,500 per acre.   About a year after the purchase a survey was made, and the land was found to contain two thirds of an acre less.   The deficiency in money was about $1,650.   This action was brought against one of the parties to whom the fund had been distributed by the master to recover from her the amount of the excess which it was claimed she was not entitled to receive.

The trial judge entered a nonsuit saying:

The plaintiff bought a tract of land which is described in the deed delivered by the master to the plaintiff according to courses and distances, and its contents are stated at six acres, three roods, and eight perches, more or less.   This deed followed the auctioneer's handbill, and the description of the property in the auctioneer's sales book, which description was assented to by the plaintiff in affixing his signature to that part of the book as indicating the amount of money he was willing to pay for the tract of land there described.   The description, it turns out according to the proofs offered by the plaintiff, was one which could not be plotted; that is to say in the language of an expert, the district surveyor, you could not make the courses and distances indicated by the deed and produce a plan of the tract on paper.   There was a variation which made it impossible to so do.   The contents, it turns out, were less than as stated.   The survey showed (the survey having been made by Mr. Gillingham according to his plot, and we will assume correctly, as he is a skillful man in these matters and the official surveyor) a difference in the contents between the original statement, that is to say, six acres and eighty hun-

dredths, and six acres and fourteen or sixteen hundredths. There was a difference, therefore, between the actual tract purchased by the plaintiff and the description by which he purchased, of either sixty-four or sixty-six hundredths of an acre, and it is as to that difference that the plaintiff now makes his complaint.

It will be observed that it cannot be said that the plaintiff did not get the tract advertised. It certainly cannot be left to the jury to say that he did not get the tract advertised in view of his own affirmative proof that the description, according to courses and distances is insensible and may not be plotted. It would seem, therefore, that on the main point of the case I should sustain the motion of the defendant for a nonsuit.

This is perhaps the more obligatory upon me in view of other considerations. That is to say, were we to assume that the plaintiff's contention shows a right to recover upon his proofs, we would have to consider whether or not the defendant is answerable to him for the amount of his damage. Under the law there is no liability in the defendant that I am able to appreciate. The defendant is not liable to the plaintiff for money had and received to the use of the plaintiff. She has not knowingly taken his money, directly or indirectly, so as to become liable to him on that account. The basic fact of the plaintiff's contention is that by reason of a mistake in description, of which the defendant must be presumed to be wholly innocent, money of the plaintiff has been distributed by a court of competent jurisdiction, that is to say, court of common pleas of this county, No. 4, to the defendant. In other words, the master has, in entire innocence, collected more money from the plaintiff than he should have collected according to the plaintiff's contention now made, but what the plaintiff thought at the time was the correct amount to pay to him, and the court has ordered the master to pay a part of that fund to the defendant. The defendant has obviously been innocent of fraud, and has taken the money under the order of court which she sets up, and has a right to set up here for her protection. Moreover, I am of the opinion that, independently of the order of distribution, the defendant may claim the protection of the order confirming the master's sale, which indicated a sale to the plaintiff of the tract of land described for a given sum of

money, and which must be regarded as having been made with the cognizance of the plaintiff, and although legally he was not a party to it, inasmuch as he was not one of the parties to the litigation, yet he was a party to it in the sense that the receipt of his title to the land depended upon the confirmation of the sale by the court, and he must be presumed to have sought that confirmation, inasmuch as he availed himself of the confirmation in taking his deed.

It is not claimed here that this defendant had any knowledge that there was any mistake in the premises. She had no more knowledge than had the plaintiff, and the plaintiff only acquired his knowledge in the month of April succeeding the month of the sale nearly a year before. Therefore, we must hold that under the law the defendant took her distributive share of the fund free from any lien of anybody now appearing before us, either in law or equity. She took it absolutely as her money under that decree of the court. The cases which the learned counsel has cited with great industry are interesting, but they are all cases of legal claim, the claim of creditors say, as against an established subject, either property, or the equivalent of property, to wit: money, and they are cases which go by virtue of a right paramount to the right of a distributee. Such is not the case here.

As to the item of $78.69 which the defendant appears to have collected from one William Howell, William Howell being also entitled to a distributive share, and this much of his share going to the defendant because he owed her money, I charge that there could be no claim in this case. As to the item of $234.68 remaining, I charge that the plaintiff has not made out a claim so as to justify my leaving it to you to say whether or not the defendant should pay it. It would be against public policy to permit the proceedings of a court of competent jurisdiction having control of the whole subject-matter, as was the case here in the matter in partition pending and settled in the court of common pleas No. 4, to be opened and the distribution of that court to be recast here upon a finding of fact by a jury and the judgment as to the law thereupon by the court. I therefore enter a nonsuit.

*C. Berkeley Taylor*, for appellant.—No actual fraud is claimed

in this case, but a mutual mistake of such an amount as would induce a court of equity to set aside the sale if it had been discovered in time, and were not discovered in time to grant relief to the purchaser: Hoover v. Senseman, 3 Cent. Repr. 540; Painter v. Wilson, 197 Pa. 434; Kerr on Fraud and Mistake, 416; Mays v. Dwight, 82 Pa. 462; Babcock v. Day, 104 Pa. 4; McCall v. Davis, 56 Pa. 431; Hovey v. Howard, 177 Pa. 323; Wolf v. Christman, 202 Pa. 475.

Plaintiff's contention is that a sale by a master in partition is only a substitute for a sale by the parties and is not like a judicial sale where the principle of caveat emptor applies: Smith v. Brittain, 3 Ired. Eq. (N. C.) 347; Bolivar v. Zeigler, 9 S. C. 287; Fairchild v. Fairchild, 59 How. Pr. 351; Keepfer v. Force, 86 Ind. 81; Miller v. Craig, 83 Ky. 623.

The general principle that creditors of an estate have a remedy in chancery after distribution against the legatees for contribution has been well recognized: Davis v. Vansands, 45 Conn. 600; Robins's Est., 4 Pa. Dist. Rep. 277; Robins's App., 180 Pa. 630; Gallen's Est., 22 Phila. 13; David v. Frowd, 1 M. & K. 200.

*Dwight M. Lowrey*, with him *Alfred R. Haig, Henry C. Thompson, Jr.*, and *William F. Harrity*, for appellee.—There was no mutual mistake: Perkins v. Gay, 3 S. & R. 327; Grogan v. Leike, 22 Pa. Superior Ct. 59. The deficiency claimed by appellant amounts to not quite ten per cent of the estimated acreage. A deficiency so small has never been held in Pennsylvania to justify the presumption of fraud or mutual mistake: Kreiter v. Bomberger, 82 Pa. 59; Koch v. Dunkel, 90 Pa. 264; Dickinson v. Voorhees, 7 W. & S. 323; Farmers' & Mechanics' Bank v. Galbraith, 10 Pa. 490; Coughenour's Admrs. v. Stauft, 77 Pa. 191; Rodgers v. Olshoffsky, 110 Pa. 147.

In none of the cases cited by the appellant was any decree involved except the decree of the court confirming the sale. In no case had the subsequent decree, distributing the price of land sold at partition between innocent distributees, ever been disturbed and the distributees been required to surrender any portion of the money received.

OPINION BY MORRISON, J., January 21, 1904:

This is an action of assumpsit and at the trial the learned

court granted a compulsory nonsuit and subsequently refused to take it off, to which ruling the plaintiff excepted and a bill was sealed.

The plaintiff's claim is founded upon an alleged state of facts of which the following is the substance: A master in partition sold to plaintiff a tract of land described by metes and bounds and said to contain six acres, three roods and eight perches of land, more or less, at $2,500 per acre. The quantity of the tract was introduced in the papers by way of description and there was no covenant or warranty as to quantity. It is conceded that the description was in accordance with the ancient title papers conveying the land. The plaintiff having voluntarily paid for the land at the rate of $2,500 per acre for the quantity mentioned in the description accepted his title and rested for about a year before making any attempt to recover for the deficiency in the quantity of land. In the meantime the master had made report of his proceedings, which had been confirmed by the court below, and the money received from the plaintiff had been paid over under decree of the court, to the parties entitled thereto long before the commencement of this suit. The full amount of purchase money paid by the plaintiff was $17,000, and the deficiency which he claims should be refunded to him is $1,650. The deficiency claimed by appellant amounts to less than ten per cent of the estimated acreage. Our question then is this: Is this deficiency large enough to require the defendant to refund where the conveyance has been fully executed by payment of the purchase money and acceptance of a deed, and where the appellant still retains the title and does not offer to rescind by reconveying the property and placing the parties in statu quo? It must be noted at this point that there is absolutely no evidence of any fraudulent misrepresentations made by the defendant or by anybody for whom she is responsible. The learned counsel for the plaintiff bases his right to recover on the ground of a mutual mistake of such an amount as would induce a court of equity to set aside the sale if it had been discovered in time, and where not discovered in time to grant relief to the purchaser. It is conceded that none of the parties to the transaction had any knowledge that the land described in the papers did not contain the quantity mentioned in the description. The coun-

sel cites Hoover v. Senseman, 3 Cent. Repr. 540, in support of appellant's right to recover. But that case does not help him. It was on a declaration which clearly set up facts which if true would justify a recovery. To this declaration the defendant demurred and the Supreme Court said : " The demurrer admits all the facts averred in the first count of the declaration. That avers the sale and purchase to have been at a specific price per acre, and through a mutual mistake, six acres more than was contained in the piece of land, was sold, bought and paid for. In view of the price paid per acre—$135—this is too large a deficiency not to relieve against in equity, as the plaintiffs in error thus obtained money which they are not actually entitled to retain, this action lies, and the judgment is correct." The declaration in that case averred that the defendants be-. lieved and represented that the land contained fifty-six acres and some perches, and the said plaintiff relying upon and believing the representations of said defendants that the said tract of land did contain fifty-six acres and some perches as represented, did pay the full purchase money for the same to said defendants. The demurrer admitted the truth of this and no good reason can be given why equity should not relieve on such a state of facts. But in our case the evidence shows that none of the parties knew or had any definite belief as to the quantity of land covered by the description, except as they judged from the language of the description. And the description in all of the title papers and the advertisement stating that the tract contained six acres, three roods and eight perches, more or less, the plaintiff was put on notice that there might be less and there might be more land in the tract. This is not a case where the defendant represented the quantity of land and the plaintiff believed and relied upon such representation. The appellant also cites Painter v. Wilson, 197 Pa. 434. But that was an action for the purchase money of land payable when the title to the same " has been thoroughly tested by said first parties, and proven to be a good and perfect title." All that this case really decides on our question is, where there is a great difference between the quantity of land sold and the quantity of land to which the vendor had title, equity will relieve the vendee from payment of the whole of the purchase money. This case has no application where the land has been

fully conveyed and the purchase money paid and the vendee long afterwards brings an action to recover back part of the purchase money on an alleged deficiency in quantity of the land. Babcock v. Day, 104 Pa. 4, is also cited. That case is authority for the proposition that while in view of the mutual mistake of the parties plaintiff was entitled to equitable relief, yet the discharge of his rule to open a judgment against him for the purchase money was not error; his remedy was to tender a reconveyance and sue for the rescission of the contract. In that case Mr. Justice CLARK said: "Babcock lived on an adjoining farm, knew the lines, and directed the subsequent survey. This is not, therefore, the case of a person selling land which he did not own, and for which he could not make title. The description in the deed was by metes and bounds, and the deed and transfer were effective to vest the title in Babcock. There was no defect in the title to the lands described in the deed, and the truth, as to the actual location of the barns, was as easily ascertainable by one of the parties as the other.

"The mistake of the parties, however, which resulted from the fault of neither, was so essential, so material and substantial, as that it may reasonably be supposed that, but for the misdescription, they might never have entered into the contract at all. Under the peculiar and special facts of this case, if the injury had been but small, as compared with the consideration, we might hold the defendant to be without remedy, but the magnitude of the injury is such, that the defendant should obtain relief in some form. He must not, however, hold to the profits of his contract, and demand compensation for his loss. He should put the plaintiff in statu quo, tender a reconveyance, and demand and sue for a rescission." In that case the deficiency was about one third of the purchase price of the land.

In the case under consideration the appellant has shown no disposition to reconvey the land and rescind the contract, but he asks to be permitted to hold to the profits of his contract and demand compensation for his alleged loss.

Wolf v. Christman, 202 Pa. 475, is also cited, but that case has no application. In it the vendee bought relying on a warranty or express representation by the vendor as to the

depth of .the lot. And the case was a bill in equity for specific performance, or in the alternative to refund the money paid. And of course, in such a case the vendee was entitled to relief, because when he purchased he relied on a warranty or express representation by the vendor as to the depth of the lot. The learned counsel for the appellant cites numerous cases from other states, and we are not disposed to discuss them because we think the law is very clear in Pennsylvania, on a state of facts like those disclosed in this suit.

It is conceded that in the absence of fraud or conscious misrepresentation by the defendant equity will only relieve where both parties labor under a mistake of fact. It has often been said it will not relieve where both parties being ignorant of the true facts, the defendant makes no representation implying knowledge, on which the plaintiff relies, and where the plaintiff proves nothing except that he had a belief not justified by the facts.

The mistake for which equity will relieve must be a mutual mistake. Ignorance of the facts on both sides is not a mistake. There must be a positive belief, shared by both parties to the transaction, either that something is true which is not true in fact, or they must believe that something is untrue which is true in fact. The mistaken belief of the plaintiff alone is no ground for relief in equity : Perkins v. Gay, 3 S. & R. 327. In that case GIBSON, J., said : " But where the parties treat upon the basis that the fact which is the subject of the agreement is doubtful, and the consequent risk each is to encounter is taken into consideration in the stipulations assented to, the contract will be valid notwithstanding any mistake of one of the parties, provided there be no concealment or unfair dealing by the opposite party, that would affect any other contract. . . . If there be no intention of fraud, no unfair dealing, and neither party has more knowledge of the fact misconceived than the other had, the contract will bind." This we think is precisely the principle involved in the case under consideration. All of the parties relying on the description in the ancient deeds and papers, there is not a scintilla of evidence that any of them knew that the land did not contain the exact quantity indicated by the description. And the deed accepted by the appellant described the land and stated

that it contained so much, more or less. In our opinion, if it had contained more it would have been his gain, and as it chanced to contain less it is his loss, and he has not shown a case that equity will relieve, and, therefore, he cannot recover in an action of assumpsit a part of the money which he paid for this tract of land, when he accepted his deed nearly a year before the commencement of this suit. In Kreiter v. Bomberger, 82 Pa. 59, Mr. Justice SHARSWOOD (p. 63) said : " The third class of cases to which the one now under consideration belongs, is where the contract is fully executed and the purchase money paid. We are of the opinion that in this class, the transaction cannot be ripped up, without actual proof of fraud or mutual mistake. Upon this question the greatness of the difference may be evidence, but not sufficient of itself. There must be other circumstances. Cases of this class very rarely arise. I can find but one instance in our books. That is the case of Large v. Penn, 6 S. & R. 488. There the difference was very great in reference to the extent of the premises. The quantity conveyed was described as 2¾ acres, and without the words 'more or less;' the actual quantity was one acre, 148 perches. Yet the vendee was denied relief, Chief Justice TILGHMAN remarking : 'It is the boundaries to which the grantee must look; he has a right to all the land within them. The quantity is matter of calculation, and be it more or less passes. There is no express covenant that the quantity in this case shall amount to 2¾ acres. Nor is there any implied covenant, because the quantity is introduced not by way of covenant, but of description.' So in Smith v. Evans, 6 Binn. 102, which was a proceeding on a mortgage, to recover unpaid purchase money, where upon a conveyance of 991¼ acres, more or less, the quantity fell short 88 acres, 48 perches, and the vendee was refused relief; Mr. Justice YEATES, in his dissenting opinion says : ' And yet I freely confess that if, under this state of facts, the whole money had been paid, and the transaction closed, I know of no legal mode whereby any of the money could be recovered back.' This distinction between cases where the purchase money has been fully paid and the demand is to recover back part, and cases where the vendor is proceeding upon his securities to enforce full payment, is well sustained by the general principles upon which courts of equity proceed.

They will not rescind a contract fully executed without clear proof of fraud or mutual mistake in an essential point. They proceed upon different principles in the enforcement of contracts.

" It follows that there was error committed by the learned judge below in admitting and submitting to the jury the deed from Kreiter to Bomberger, as in itself sufficient evidence of fraud or mistake, if they should think the difference very great. If it was sufficient of itself, it was a question of law for the court and not a fact for the jury. There was no evidence besides the deed to show fraud in Kreiter or mutual mistake of the parties. The vendee was well acquainted with the lot, within the boundaries described in the deed. That was the lot he bought. There was no representation by the vendor of the quantity of acres it contained. The description in the deed was most probably copied from the prior conveyances to him recited in it. Both parties made and concluded the bargain with their eyes open. The vendee threw out no anchor to windward as to quantity as he did as to title by his covenant of general warranty."

If this authority is good law it rules our question as there is absolutely no evidence of fraud or mutual mistake outside of the description in the deed and the evidence that the quantity of land fell short nearly ten per cent. Where a tract of land, described as containing a given number of acres, more or less, is sold for a gross sum, the vendee is never entitled to abatement, either before or after settlement and delivery of the deed, unless the discrepancy is so large as to justify the court in finding either a fraud or a mutual mistake. On the other hand, where a tract of land is sold for a given price per acre, although described to contain a certain number of acres, more or less, the vendee has, before settlement, the right to a survey, and is bound to pay only the exact sum which such survey shows to be due.

But where in such case the vendee waives a survey before settlement, accepts his deed and pays the price, he has thereafter no right against his vendor for the return of any part of the purchase money different from the right enjoyed by the purchaser of a tract of land for a gross sum in case of deficiency of acreage. In other words, settlement without survey is a waiver of the vendee's right to exact measurement.

In the case in hand the appellant has disclaimed all allegation of fraud, and he has not proved that the settlement was made under a mutual mistake, but, really, his evidence shows that the settlement was made as a compromise of a doubtful situation, as both parties acted upon the description in the deed and it stated the quantity to be so much, more or less.

In Dickinson v. Voorhees, 7 W. & S. 353, there was an action of debt on a bond for the payment of $15,000 purchase money. The land was described as containing 3,235 acres and there was a deficiency of 445 acres, yet the Supreme Court held that this was no defense and the judgment for the whole sum was affirmed. Farmers' and Mechanics' Bank v. Galbraith, 10 Pa. 490, we think, rules the question under consideration, in a very brief opinion by GIBSON, C. J. In that case the sale was by the acre and the purchaser was injured by an erroneous draft exhibited to him. But there was no deceit and the difference was caused by the mistake of the surveyor. But the case holds that mutual misapprehension is not a ground to recall a contract which is past and gone. Where the contract is executed by deed, or by bond or other security taken for unpaid purchase money, the rule is not to open such contract to allow a deficiency or recover for an excess, even if the sale be by the acre. The sale being of a defined tract, the quantity named being said to be " more or less," these words are of great force in determining the intent of the parties to stand upon the quantity stated : Coughenour's Admrs. v. Stuaft, 77 Pa. 191.

Rodgers v. Olshoffsky, 110 Pa. 147, is a case which standing alone would, on the conceded facts in the one under consideration, rule it against the plaintiff. In that case, like ours, there was not even a scintilla of evidence showing bad faith on the part of the vendor, and therefore it was error to leave that question to the jury. The action was a feigned issue to determine the validity of a judgment for $888, entered upon a judgment note given by defendant to plaintiff. This judgment was for purchase money of land and there was an admitted deficiency in the quantity. But there was no representation, covenant or warranty other than the description contained in the deed. The court below submitted the question to the jury and the verdict was substantially against the plaintiff. The plaintiff

appealed and the Supreme Court reversed the judgment and held that the defense could not be made.

The question of laches of the plaintiff in not suing until after the money had been paid over to the parties entitled to it, in pursuance of a decree of the court, is also discussed by the learned counsel for both appellant and appellee. But we are not disposed to decide this question for the reason we are so clearly of the opinion that the plaintiff has entirely failed to show grounds for recovering back any part of the purchase money, and it would be a waste of time to pass upon the question of laches.

Beyond doubt the plaintiff purchased the land in question on inspection and his judgment of its value, and he took his chances as to the description being correct, and the deficiency is clearly insufficient, standing alone, to justify submitting the question of fraud or mutual mistake to a jury.

The assignments of error are all dismissed and the judgment is affirmed.